UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ATLANTIC CASUALTY INSURANCE COMPANY,

    Plaintiff,

v.

SAM CRUM, et al.,

    Defendants.

No. 1:17-cv-00459-DAD-SKO

<u>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART AND AUTHORIZING FURTHER BRIEFING</u>

(Doc. No. 18)

This matter is before the court on plaintiff's motion for summary judgment. (Doc. No. 18.) A hearing on the motion was held on November 20, 2018. Attorney Brian M. Weiss appeared telephonically on behalf of plaintiff Atlantic Casualty Insurance Company ("ACIC"), and Attorney Linda J. DeVore appeared in person on behalf of defendant Sam Crum Water Well Drilling, Inc. ("WDI"). Having considered the parties' briefs and oral arguments, and for the reasons set forth below, the court will grant plaintiff's motion for summary judgment in part.

**BACKGROUND**

In this declaratory relief action ACIC seeks a declaration from this court that, as a matter of law, the damages sought against WDI in an underlying state court action are not covered under the insurance policy it issued WDI (the "ACIC policy") and that ACIC therefore has no duty to defend or indemnify WDI with respect to the underlying state court action. (Doc. No. 5 at 2, 13–

1

14.) ACIC also seeks a declaration that it is entitled to reimbursement for the fees and costs it has incurred in defending WDI in that state court action to date. (*Id.* at 2, 14–15.) WDI counters that ACIC has a duty to defend and indemnify WDI in the underlying action pursuant to the ACIC policy.[1] (*See* Doc. No. 25.)

The material facts of this case are undisputed and, as relevant to the pending motion, are set forth below.

**A.    The Underlying State Court Action**

On February 10, 2016, Paul E. Parreira[2] ("Parreira") filed a complaint in the Merced County Superior Court naming Sam Crum[3] and WDI as the defendants. (Doc. No. 18 at 13.) Parreira's complaint sought the award of damages for breach of contract, common counts, and negligence. (*Id.* at 13–14.) That complaint alleges the following. On or around March 22, 2014, Parreira and WDI entered into a contract whereby WDI agreed to drill, case, and preliminarily develop two water wells (the "Arroya well" and the "Cozzi well") in rural Merced County. (*Id.*) In exchange, Parreira agreed to pay $78,845 for the Arroya well and $81,970 for the Cozzi well. (*Id.*) Each well was to produce between 1400 and 1800 gallons of water per minute. (*Id.* at 13.)

Around June 2014, WDI "breached the contract by failing to deliver working wells as agreed upon, and failing to report the accurate location of [the Arroya well], thus rendering the

---

[1]  In its answer to the operative complaint in this action (Doc. No. 12 at 6) and in its responses to ACIC's special interrogatories (Doc. No. 21-3 at 8–12), WDI argued that the ACIC insurance policy is both ambiguous and an adhesion contract. However, WDI does not advance either of these contentions in its opposition to the pending motion for summary judgment. It therefore appears that WDI has abandoned these affirmative defenses and, accordingly, the court will not address them. *Jones v. Taber*, 648 F.2d 1201, 1203 (9th Cir. 1981) ("Of course, the burden is always on the party advancing an affirmative defense to establish its validity.").

[2]  Parreira is a named defendant in this declaratory relief action. While Parreira answered ACIC's complaint (Doc. No. 8), he has not opposed its motion for summary judgment. This may be because ACIC's motion is "direct[ed] solely at [WDI]" (Doc. No. 18 at 6 n.1), or because Parreira does not oppose the motion. In either event, there is no genuine dispute as to any material fact and the evidence before the court provides a sufficient basis upon which to rule upon the motion.

[3]  Crum, the principal owner of WDI, was initially a named defendant in the underlying action, but he has been dismissed from that action. (Doc. No. 18 at 6 n.1.) ACIC's pending motion for summary judgment is therefore not directed against Crum (*id.*), and WDI's opposition is filed on behalf of itself only (Doc. No. 25 at 1, 7).

2

County permit null and void and rendering the [Arroya] well unusable." (Doc. No. 5 at 11.) In addition to the contract prices for both wells, in his action pending in state court, Parreira seeks $25,549 in damages for remediation costs, for a total breach amount sought of $188,364 on the breach of contract claim. (*Id.*) In the common counts cause of action, Parreira alleges that WDI "became indebted to [Parreira] for money paid, laid out[,] and expended to or for defendant at defendant's special instance and request in the amount of $188,364." (*Id.*) Parreira also contends that WDI negligently built the wells because they produced one-half of their expected water output. (Doc. No. 18 at 14–15.) Lastly, Parreira claims that WDI "negligently and carelessly measured the distance of [the Arroya well] from an existing residential water well such that the [Arroya] well had to be destroyed." (*Id.*)

WDI tendered the underlying action to ACIC for a defense and indemnification under the ACIC policy. (Doc. No. 5 at 12.) On March 16, 2016, ACIC issued a reservation of rights letter to WDI advising that it agreed to provide WDI with a defense in the underlying action subject to the reservation of rights letter and to the terms, conditions, limitations, and exclusions of the ACIC policy. (*Id.*) ACIC retained defense counsel on behalf of WDI, which defense remains in place to date. (*Id.*)

**B.     The ACIC Insurance Policy**

ACIC issued Commercial General Liability ("CGL") insurance policy number L214000157 to WDI for the policy period of March 2, 2014 to March 2, 2015. (Doc. No. 18 at 7.) The ACIC policy states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(Doc. No. 18 at 8.) The ACIC policy "applies to 'bodily injury' and 'property damage' only if (1) [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; [and] (2) [t]he 'bodily injury' or 'property damage' occurs during the policy

3

period." (*Id.*) Property damage is defined by the policy as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." (*Id.* at 10–11.) The policy explicitly excludes breach of contract damages from the definition of property damage. (*Id.* at 11.) In addition, an "occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.*)

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computs., Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Undisputed facts are taken as true for purposes of a motion for summary judgment. *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 745 (9th Cir. 2010). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

**ANALYSIS**

**A. Duty to Defend or Indemnify in the Underlying Action.**

"It is . . . a familiar principle that a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993), *as modified on denial of reh'g* (May 13, 1993). "[T]he [insurer] must defend a suit which *potentially* seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1966). "The determination [of] whether the insurer owes a duty to

defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Horace Mann*, 4 Cal. 4th at 1081. In analyzing the policy, "courts must consider both the [] language in the policy, and the endorsements or exclusions affecting coverage, if any, included in the policy terms." *Modern Dev. Co. v. Navigators Ins. Co.*, 111 Cal. App. 4th 932, 939 (2003), *as modified* (Aug. 29, 2003), *as further modified* (Sept. 18, 2003). "Facts known to the insurer and extrinsic to the third party complaint can generate a duty to defend, even though the face of the complaint does not reflect a potential for liability under the policy." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 296 (1993).

To prevail in an action for declaratory relief regarding the duty to defend, "the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*." *Id.* at 300; *see also Reg'l Steel Corp. v. Liberty Surplus Ins. Corp.*, 226 Cal. App. 4th 1377, 1389 (2014) ("The insurer's defense duty is obviated where the facts are undisputed and conclusively eliminate the potential the policy provides coverage for the third party's claim.") "Facts merely tending to show that the claim is not covered or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage . . . add no weight to the scales." *Montrose Chem.*, 6 Cal. 4th at 300.

Accordingly, for WDI to survive summary judgment here it must show that the underlying claims may fall within policy coverage; ACIC, on the other hand, must prove that they cannot. *Montrose Chem.*, 6 Cal. 4th at 300. ACIC "is entitled to summary judgment that no potential for indemnity exists if the evidence establishes no coverage under the policy as a matter of law." *Reg'l Steel*, 226 Cal. App. 4th at 1389; *see also Am. Star Ins. Co. v. Ins. Co. of the W.*, 232 Cal. App. 3d 1320, 1325 (1991) ("If the claim does not fall within the insuring clauses, there is no need to analyze further. There is no coverage.") (citations omitted).

The ACIC policy provides WDI with coverage for "property damage" caused by an "occurrence." (Doc. No. 18 at 8.) ACIC contends that it not obligated to defend or indemnify WDI in the underlying state court action because (1) the damages claimed in that action were not caused by an occurrence as defined by the policy; and (2) the damages claimed in the underlying

6

action do not constitute property damage as defined by the policy. For the reasons explained below, this court agrees.

1. The Underlying Action Does Not Seek Damages Caused by an "Occurrence."

The ACIC policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. No. 22-2 at 30.) "In the context of liability insurance, an accident is an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." *Delgado v. Interinsurance Exch. of Auto. Club of S. California*, 47 Cal. 4th 302, 308 (2009) (citation and internal quotation marks omitted). "Under California law, the word 'accident' in the coverage clause of a liability policy refers to the conduct of the insured for which liability is sought to be imposed on the insured." *Id.* at 311. Therefore, "an injury-producing event is not an 'accident' within the policy's coverage language when all of the acts, the manner in which they were done, and the objective accomplished occurred as intended by the actor." *Id.* at 311–12. In other words:

> An accident . . . is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage. Clearly, where the insured acted deliberately with the intent to cause injury, the conduct would not be deemed an accident. Moreover, where the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an "accident" merely because the insured did not intend to cause injury.

*Merced Mut. Ins. Co. v. Mendez*, 213 Cal. App. 3d 41, 50 (1989) (citation omitted); *see also Delgado*, 47 Cal. 4th at 315. One state appellate court has explained as follows:

> The following is illustrative. When a driver intentionally speeds and, as a result, negligently hits another car, the speeding would be an intentional act. However, the act directly responsible for the injury—hitting the other car—was not intended by the driver and was fortuitous. Accordingly, the occurrence resulting in injury would be deemed an accident. On the other hand, where the driver was speeding and deliberately hit the other car, the act directly responsible for the injury—hitting the other car—would be intentional and any resulting injury would be directly caused by the driver's intentional act.

*Merced Mut. Ins.*, 213 Cal. App. 3d at 50. "The insured's subjective intent [to cause harm] is irrelevant. Indeed, it is well established in California that the term 'accident' refers to the nature

7

of the act giving rise to liability; not to the insured's intent to cause harm." *Fire Ins. Exch. v. Superior Court*, 181 Cal. App. 4th 388, 392 (2010) (citations omitted). Thus, the California Supreme Court has recognized, in insurance cases, "courts have . . . rejected the notion that an insured's mistake of fact or law transforms a knowingly and purposefully inflicted harm into an accidental injury." *Delgado*, 47 Cal. 4th at 312.

As an initial matter, the court notes that the only damage claimed in the underlying state court action that WDI contends was caused by an occurrence is the Arroya well being drilled in the wrong location. (Doc. No. 25 at 17.) WDI does not argue that the damage resulting from the construction of the Cozzi well was caused by an occurrence, nor does WDI argue that the damage caused by the failure of the Arroya and Cozzi wells to produce the expected output of water was caused by an occurrence. Consequently, the court concludes based upon the evidence before it on summary judgment that Parreira's causes of action for (1) breach of contract relating to the "[f]ailure to deliver wells as agreed upon" as that cause of action relates to water output (Doc. No. 23-2 at 4); (2) common counts relating to the "money paid, laid out, and expended to" WDI (*id.* at 5); and (3) negligence claims relating to the construction of the wells (but not the misplacement of the Arroya well) (*id.* at 6–7) are clearly not covered by the ACIC policy because these causes of action in no sense seek damages caused by an "occurrence" as defined by the policy.

Turning to the misplacement of the Arroya well, ACIC contends that the acts giving rise to Parreira's claims in the underlying state court action were not caused by an occurrence because WDI intended to and did drill the Arroya well exactly where it did. (Doc. No. 18 at 21.) WDI counters that, unbeknownst to it, on the morning that the Arroya well was to be drilled, Parreira's agent noticed that the markers for the original drilling location had been displaced by an earlier

/////
/////
/////
/////
/////
/////

8

clearing of trees and that the agent subsequently moved the markers.[4] (Doc. No. 25 at 17–20.) In effect, WDI's argument is that, because it did not know the drilling markers had been moved prior to drilling the Arroya well, any subsequent damage was caused by an "occurrence" as defined in the policy. This argument misses the mark.

First, the "additional, unexpected, independent, and unforeseen happening must be a subsequent, not prior, event to the volitional activity." *Alco Iron & Metal Co. v. Am. Int'l Specialty Lines Ins. Co.*, 911 F. Supp. 2d 844, 851 (N.D. Cal. 2012) (internal quotation marks omitted). Parreira's agent moving the markers is not an occurrence as defined by the ACIC policy because the displacement of the markers happened prior to WDI's intentional and volitional act of drilling the Arroya well.

Second, "it is the unexpected, undesigned, and unforeseen nature of the injury-causing event that determines whether there is an accident within the policy's coverage." *Delgado*, 47 Cal. 4th at 309 (citation and internal quotation marks omitted). Here, the injury-causing event was the drilling of the Arroya well, not the displacement of its markers. Indeed, had WDI not drilled the Arroya well but Parreira's agent still moved the markers, the damages claimed by Parreira relating to the destruction of the Arroya well would not even exist. Moreover, it is undisputed that the drilling of the Arroya well was intentional. (Doc. No. 25 at 17.) The court recognizes that the displacement of the markers was not expected by WDI, but WDI "cites no case that supports its contention that its mistaken belief that" it was drilling in the right location, "which w[as] caused by another, constitute[s] an unexpected, independent, and unforeseen

---

[4] WDI has adduced the following documents to establish that Parreira's agent moved those markers: (1) the deposition testimony of Parreira's agent stating that he was present on the morning of the drilling to make sure the markers were placed (Doc. No. 25-2, Ex. C); (2) a separate statement of undisputed facts demonstrating WDI filed a cross-complaint against Parreira's agent in the underlying state court action (Doc. No. 25-4 at 3); (3) Crum's declaration stating that Parreira's agent "re-did the marking stakes on the morning hours before" WDI began drilling and without Crum's knowledge (Doc. No. 25-1 at 4); and (4) the application for the permit for the Arroya well indicating that WDI applied for a permit to place the well in a different location than where the markers were located at the time of the drilling (*id.*, Ex. G). In its reply, ACIC does not dispute this evidence or the conclusions that WDI draws from it. (*See* Doc. No. 26.) The court has reviewed the evidence, and solely for the purposes of the pending motion, the court considers it to be undisputed fact that, unbeknownst to WDI, Parreira's agent moved the markers on the morning the Arroya well was to be drilled.

9

circumstance that would make its action accidental." *Alco Iron*, 911 F. Supp. 2d at 850. Rather, "courts have . . . rejected the notion that an insured's mistake of fact or law transforms a knowingly and purposefully inflicted harm into an accidental injury." *Delgado*, 47 Cal. 4th at 312 (collecting cases).

The decision in *Fire Insurance Exchange v. Superior Court*, 181 Cal. App. 4th 388 (2010), is instructive in this regard. There, homeowners had renovated their house and, in doing so, encroached onto their neighbors' property, mistakenly believing that they had the right to do so. *Id.* at 388. The homeowners' mistaken belief was based on their engineer's "fail[ure] to obtain and include an executed grant deed in the Lot Line Adjustment application" which "result[ed] in their failure to obtain the legal right to build where they did." *Id.* at 396. The insurance company refused to defend the homeowners in a subsequent action brought against them by their neighbors, arguing that any losses claimed by the neighbors resulted from the homeowners' intentional act of building over the lot line, not as a result of an occurrence or accident. *Id.* at 391. Similar to WDI's argument here, the homeowners contended that their engineer's failure to obtain and include the grant deed in the lot line adjustment was "an unintended aspect in the causal series of events leading to the encroachment." *Id.* at 396. The California Court of Appeal rejected this argument, holding that:

> [T]he reasons for their failure to obtain title is irrelevant to the determination whether the act in locating the building where they did can be characterized as an accident. There was no unexpected and unintended event between the intentional construction of the building and the encroachment.

*Id.* In other words, the homeowners' "mistaken belief in their legal right to build d[id] not transform their intentional act of construction into an accident." *Id.*; *see also Albert v. Mid-Century Ins. Co.*, 236 Cal. App. 4th 1281, 1292 (2015) (finding no "occurrence," and thus no insurance coverage, where insured hired a contractor to trim a neighbor's olive trees that she mistakenly assumed were on her property and the contractor excessively cut the trees); *Reiser v. Safeco Ins. Co. of Am.*, No. CV 12-5640-GHK (VBKx), 2012 WL 12892152, at *3 (C.D. Cal. Dec. 20, 2012) ("Just as a decision to build a structure is not accidental even if based on the insureds' belief that they were legally entitled to build where they did, the Reisers' decision

10

to *stop* trimming their landscaping was not accidental even if based on their belief that they had no obligation to preserve the view.") (citation omitted); *Aquarius Well Drilling, Inc. v. Am. States Ins. Co.*, No. 2:12-CV-00971-MCE, 2012 WL 6048993, at *7 (E.D. Cal. Dec. 5, 2012), *aff'd,* 593 F. App'x 720 (9th Cir. 2015) ("Thus, whether Aquarius' well testing was done negligently or not, regardless of the unintended consequences, the insured's conduct alleged to have given rise to claimant's injuries is necessarily non-accidental, not because any 'harm' was intended, but simply because the conduct could not be engaged in by 'accident.'") (citation and internal quotation marks omitted).

The undersigned can discern no meaningful difference between the circumstances confronted by the court in *Fire Insurance Exchange* and the present case. WDI contends that it did not intend to drill the Arroya well in the wrong location, but, like the homeowners in *Fire Insurance Exchange*, it does not dispute that it intended to and did in fact drill the Arroya well. Although the markers were moved without WDI's knowledge, the volitional act that gave rise to the claim for damages—the drilling of the Arroya well (albeit in the wrong location)—was intended by WDI, and there is no evidence before the court on summary judgment of any unexpected or unintended event transpiring between the intentional drilling of the Arroya well and the subsequent damage claimed by Parreira.

The court concludes as a matter of law, based on the evidence presented on summary judgment, that any damage claimed in the state court action relating to the misplacement of the Arroya well was not caused by an occurrence as defined by the ACIC policy.[5]

    2.    The State Court Action Does Not Seek Damages for "Property Damage."

The ACIC policy defines property damage as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." (Doc. No. 22-2 at 57.) As amended by endorsement AGL-106 03 13, that

---

[5] The court's conclusion that none of the causes of action in the underlying state court action seek damages caused by an "occurrence" is in and of itself a sufficient basis upon which to grant ACIC's motion for summary judgment on its first two claims. *See, e.g.*, *Fire Ins. Exch.*, 181 Cal. App. 4th at 396 ("In light of the court's ruling that there is no coverage because the claimed damage does not arise from an 'accident,' the court need not consider the additional issue whether the Parsons have alleged property damage.")

11

policy expressly excludes from the definition of property damage those damages resulting from "breach of contract [or] breach of any express or implied warranty," and "any cost or expense to repair, replace, or complete any work to any property that [WDI], or any insured, are otherwise obligated to repair, replace or complete pursuant to the terms of any contract." (*Id.*)

        a.     *Parreira Seeks Economic Damages In the Underlying Action.*

In the underlying action, Parreira seeks the following damages: (1) for breach of contract, $78,845 for the Arroya well, $81,970 for the Cozzi well, and $27,549 for "the costs of remediation attempts"; (2) for common counts, the total breach of contract damages, "which is the reasonable value" of "money paid, laid out, and expended" by Parreira to WDI; and (3) for negligence, "money damages . . . in an amount to be proved at trial." (Doc. No. 23-2 at 4–7.)

The damages Parreira is seeking for breach of contract and the costs of remediation do not constitute property damage because, as described above, endorsement AGL-106 03 13 expressly excludes them from the definition of property damage covered under the policy. *See Reg'l Steel*, 226 Cal. App. 4th at 1393 ("The insurer has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected.") (citation and internal quotation marks omitted).

Even if endorsement AGL-106 03 13 did not apply, all of the damages Parreira is seeking are for economic losses, which are not of the nature and kind that the ACIC policy covers. *Gray*, 65 Cal. 2d at 274; *id.* at 275 ("We look to the nature and kind of risk covered by the policy as a limitation upon the duty to defend."). Coverage A of the ACIC policy, the coverage at issue, is titled "BODILY INJURY AND PROPERTY DAMAGE LIABILITY" and the relevant sections and definitions address only bodily injury and property damage. (Doc. No. 22-2 at 17.) WDI has proffered no evidence on summary judgment indicating that Coverage A or any other section of the ACIC policy provides coverage for economic damages such as those sought by Parreira.

Instead, WDI disputes (1) the existence of a contract between WDI and Parreira; (2) whether WDI promised or represented that the Arroya and Cozzi wells would produce a specific output of water; (3) whether WDI breached the contract by using substandard materials in constructing the wells; and (4) whether WDI acted negligently in constructing the Arroya and

Cozzi wells. (*See* Doc. No. 25 at 9–11.) However, these arguments are of no relevance to the issue before this court on summary judgment. This is because whether Parreira "ultimately prevails in the underlying action has no bearing on whether the claim itself is covered by the policy." *All Green Elec., Inc. v. Sec. Nat'l Ins. Co.*, 22 Cal. App. 5th 407, 414 (2018).

Because in the underlying state court action Parreira seeks purely economic damages, those claims for damages are not within the scope of the ACIC policy.

      b.  *The Demolition of the Arroya Well Does Not Constitute Property Damage.*

WDI next contends that the damage caused by the demolition of the Arroya well constitutes property damage as defined by the ACIC policy. (Doc. No. 25 at 12.) Here, too, WDI misses the mark.

In California, "the prevailing view is that the incorporation of a defective component or product into a larger structure does not constitute property damage unless and until the defective component causes physical injury to tangible property in at least some other part of the system." *F & H Constr. v. ITT Hartford Ins. Co.*, 118 Cal. App. 4th 364, 372 (2004). Consequently, "property damage is not established by the mere failure of a defective product to perform as intended. Nor is it established by economic losses such as the diminution in value of the structure or the cost to repair a defective product structure." *Id.* (citation omitted). These principles are in keeping with the basic purpose of CGL policies, which

> [A]re not designed to provide contractors and developers with coverage against claims their work is inferior or defective. The risk of replacing and repairing defective materials or poor workmanship has generally been considered a commercial risk which is not passed on to the liability insurer. Rather liability coverage comes into play when the insured's defective materials or work cause injury to property other than the insured's own work or products.

*Id.* at 373 (citations and internal quotation marks omitted). "In short, a liability insurance policy is not designed to serve as a performance bond or warranty of a contractor's product." *Id*. (citations omitted).

Here, the undisputed facts on summary judgment establish that the damage to the Arroya well and the surrounding area was not caused by the well or its drilling; "[r]ather, such damage resulted from the *remediation* of the [well], and remediation work does not constitute property

13

damage under California law." *Am. Home Assurance Co. v. SMG Stone Co., Inc.*, 119 F. Supp. 3d 1053, 1060 (N.D. Cal. 2015); *see also Reg'l Steel*, 226 Cal. App. 4th at 1393 ("California cases consistently hold that coverage does not exist where the only property 'damage' is the defective construction, and damage to *other* property has not occurred."). The court therefore concludes that as a matter of law the damage allegedly caused by the demolition of the Arroya well does not constitute property damage as defined by the ACIC policy.

Having determined that the damages claimed in the underlying action (1) were not caused by an occurrence and (2) do not constitute property damage, the court finds that there is no genuine dispute as to whether or not the ACIC policy covers the causes of action asserted in the underlying state court action. The court will therefore grant ACIC's motion for summary judgment as to its first claim seeking a declaration that ACIC has no duty to defend WDI in the underlying action, as well as its second claim seeking a declaration that ACIC has no duty to indemnify WDI in that underlying action.

**B.      Any Factual Disputes Remaining in the Underlying Action are Not Material to ACIC's Motion for Summary Judgment Before This Court.**

Finally, WDI points to various factual disputes remaining in the underlying state court action that it claims precludes the granting of summary judgment in this declaratory relief action. (Doc. No. 25 at 28–32.) The argument is unpersuasive.

It is true that, "[t]o eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate *when the coverage question turns on facts to be litigated in the underlying action.*" *Montrose Chem.*, 6 Cal. 4th at 476 (emphasis added). However, the issue before the court in this action is a narrow one, unrelated to the merits of the underlying state court action: Does the ACIC policy require ACIC to defend and indemnify WDI in the underlying action? In determining that it does not, the court has compared the allegations of the complaint in the underlying action with the terms of the ACIC policy and has considered the evidence before it on summary judgment. In doing so, the court has not been called upon to make factual determinations about whether a contract between Parreira and WDI was formed, whether WDI

14

breached the contract, or whether WDI constructed the Arroya and Cozzi wells negligently. Moreover, WDI has not pointed the court to any factual dispute remaining in the underlying action pending in state court that affects the coverage question at issue here. To the contrary, the court finds that the facts in dispute in the underlying action are completely unrelated to whether the ACIC policy provides WDI with coverage for the claims brought by Parreira in the underlying action. *Id.* ("[W]hen the coverage question is unrelated to the issues of consequence in the underlying case, the declaratory relief action may properly proceed to judgment."). On the other hand, the facts relevant to the coverage inquiry are undisputed and conclusively eliminate the potential the ACIC policy provides coverage for Parreira's claims. *See Reg'l Steel Corp*, 226 Cal. App. 4th at 1389.

**C.     Reimbursement of Fees and Costs Incurred in WDI's Defense.**

Although not substantively briefed or analyzed, it appears ACIC also seeks summary judgment on its third claim seeking a judicial declaration that it is entitled to reimbursement of the fees and costs it has expended in defending WDI in the underlying state court action.[6] (Doc. No. 18 at 29.)

"California law clearly allows insurers to be reimbursed for attorney's fees and other expenses paid in defending insureds against claims for which there was no obligation to defend." *Buss v. Superior Court*, 16 Cal. 4th 35, 50, 939 P.2d 766, 776 (1997) (citation and internal quotation marks omitted).

> [T]he insurer may unilaterally condition its proffer of a defense upon its reservation of a right later to seek reimbursement of costs advanced to defend claims that are not, and never were, potentially covered by the relevant policy. Such an announcement by the insurer permits the insured to decide whether to accept the insurer's terms for providing a defense, or instead to assume and control its own defense.

*Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 656 (2005).

---

[6] ACIC briefly refers to the third claim in the introduction and conclusion of the pending motion. (*See* Doc. No. 18 at 5, 29.) WDI did not address this issue in its opposition. Because the court will permit ACIC to file supplemental briefing to detail the costs it has incurred in defending WDI in the underlying action, the court will also permit WDI to file a response thereto. Those supplemental briefs shall be limited solely to whether ACIC is entitled to reimbursement and whether the reimbursement ACIC seeks is reasonable.

15

ACIC argues that after WDI tendered the underlying action for a defense and indemnity under the ACIC policy, ACIC issued its reservation of rights letter to WDI, advising WDI that ACIC would agree to provide WDI with a defense, subject to the limitations set forth in the ACIC policy as well as the reservation letter itself. (Doc. No. 18 at 15.) The reservation letter provides that:

> ACIC expressly reserves its right . . . to be reimbursed our defense costs and fees incurred in the event that it is subsequently determined that there is no coverage under our policy for the acts alleged by [Parreira] or that no duty to defend existed under the terms and conditions of the ACIC policy. ACIC also reserves its rights under California law to seek reimbursement of defense fees and costs specifically related to non-covered causes of action pursuant to *Buss v. Superior Court*.

(Doc. No. 20-1 at 13.) ACIC thus served notice to WDI that it might seek to recover defense fees and costs if it were later determined that ACIC owed no duty to defend WDI.

The court has now found that ACIC was not obligated to defend WDI in the underlying action under the terms of the policy. It would appear that ACIC is therefore entitled to reimbursement for all sums reasonably incurred in defending WDI in the underlying action. However, ACIC has not produced proof of the amount of fees and costs it has expended in defending WDI in the underlying action. *See, e.g.*, *Travelers Indem. Co. of Am. v. SFA Design Grp., LLC*, No. 2:16-cv-1238-MCE-KJN, 2018 WL 1466559, at *4 (E.D. Cal. Mar. 26, 2018) (in seeking reimbursement, insurance company produced payments summaries and checks to law firms as well as invoices from the law firms); *Northfield Ins. Co. v. Garcia*, No. 1-15-cv-01701-DAD-SKO, 2016 WL 2625934, at *6 (E.D. Cal. May 9, 2016) (in seeking reimbursement, insurance company produced a declaration attesting to the fees and costs expended), *report and recommendation adopted,* No. 1-15-CV-01701-DAD-SKO, 2016 WL 8650137 (E.D. Cal. July 22, 2016). The court will permit ACIC to file supplemental briefing detailing the costs it has incurred in defending WDI in the underlying suit and providing the court with proof of payment.

/////
/////
/////

16

**CONCLUSION**

For the reasons set forth above:

1. Plaintiff's motion for summary judgment (Doc. No. 18) is granted as to plaintiff's first and second claims;

2. As to plaintiff's third claim, plaintiff is granted leave to file supplemental briefing within fourteen (14) days of the date of this order detailing the costs it has incurred in defending WDI in the underlying suit and providing proof of payment;

3. Defendant may file a reply to plaintiff's supplemental briefing regarding fees and costs within seven (7) days after plaintiff's filing of its supplemental briefing; and

4. All currently scheduled dates in this action, including the March 4, 2019 Final Pretrial Conference and the April 2, 2019 Trial, are hereby vacated.

IT IS SO ORDERED.

Dated: **January 29, 2019**

UNITED STATES DISTRICT JUDGE